IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON C. COLLINS,<br><br>Defendant. | 4:17CR3116<br><br>**FINDINGS, RECOMMEDNATION, AND ORDER** |

Defendant Aaron C. Collins ("Defendant") has moved to suppress evidence and statements obtained during a traffic stop on November 10, 2016, alleging violations of his Fourth and Fifth Amendment rights. Defendant additionally seeks suppression of evidence and statements obtained during an arrest and vehicle search conducted on January 27, 2017, again alleging both Fourth and Fifth Amendment violations. For the following reasons, Defendant's motion should be denied.

## STATEMENT OF FACTS

After hearing testimony and reviewing the video evidence, the undersigned magistrate judge finds the following facts are credible.

On November 10, 2016, Lincoln Police Officers Gratz and Hallowell observed a white Jeep Patriot exit the garage of a residence on the 400 block of E Street in Lincoln, Nebraska. At the time of the incident, the officers were conducting surveillance of the residence based on reports that it was connected to the illegal manufacture and sale of methamphetamine. When the Jeep exited the garage, Officers Gratz and Hallowell followed it. They observed an improper

turn and failure to properly signal lane changes, in violation Neb. Rev. Stat. § 60,161 and § 60-6,159. The officers initiated a traffic stop.

Defendant and Desmond Hauser ("Hauser") were identified as the vehicle's occupants. The officers were aware of reports from a confidential informant regarding Hauser's alleged involvement in methamphetamine distribution, and the same informant indicated Hauser typically carried firearms, often concealing them in his waistband. Officer Hallowell observed a pocket knife in the vehicle near Hauser and asked if he had any other weapons. Hauser said that he did not, and he complied when asked to step out of the vehicle for a pat-down search.

Officer Gratz then asked Defendant if there were any illegal items in the vehicle. Defendant indicated there were not, but he began acting apprehensively. Officer Gratz repeatedly asked Defendant to keep his hands visible and on the steering wheel, but Defendant persisted in obscuring his hands and reaching towards his pockets. Eventually, Defendant was asked to step out of the vehicle.

At that time, two additional supporting officers—Officers Hubka and Wayne—arrived to assist. Together, Officers Gratz and Hubka physically aided Defendant in exiting the Jeep. The officers conducted a pat-down search of Defendant and discovered brass knuckles—affixed with knives—concealed in Defendant's pocket. Defendant was placed under arrest for carrying a concealed weapon, in violation of Neb. Rev. Stat. § 28-1202.

During the encounter, officers observed a jar containing white residue in the passenger floorboard of the vehicle. Based on their training and experience, the officers believed the jar contained methamphetamine. They seized the jar,

and field-tested the residue. The field test was positive for amphetamines. The officers then searched the remainder of the car and found no other evidence of criminal activity.

During transport to the Lancaster County Jail, Defendant appeared extremely nervous and was asked if he was "okay" and whether the officers "had missed something" during the pat-down. (Filing No. 37 Cm/ECF p. 20). Defendant then admitted that he had illegal drugs in one jacket pocket that the officers had failed to discover during the initial pat-down. Officers recovered the substance from Defendant's pocket which also field tested positive for amphetamines. The officers completed transport to the Lancaster County Jail, and Defendant was advised of the Miranda warnings at that time.

On January 27, 2017, Defendant had an additional encounter with the Lincoln Police Department officers. Officer Hyland observed a red Ford Taurus driving near the intersection of 33rd Street and Huntington Avenue. The officer ran the license plate number of the vehicle and determined that the car was registered to Defendant. Officer Hyland further determined that Defendant had a suspended driver's license.

The officer followed Defendant and saw him park and exit the vehicle in an alleyway parking lot near 37th Street and Baldwin Avenue. After contacting Defendant and confirming his identity, Officer Hyland asked Defendant to sit inside his police vehicle while he wrote out a traffic citation for driving with a suspended license. As they walked toward the police cruiser, Defendant appeared nervous. As with the November 2016 traffic incident, Defendant had to repeatedly be warned to keep his hands visible and out of his pockets. Officer Hyland then noticed what appeared to be an object inside Defendant's

3

sweatshirt. He conducted a pat-down search and placed Defendant under arrest for driving with a suspended license. Two additional officers arrived to assist.

During the pat-down, Officer Hyland discovered plastic bags containing a substance that, based on his training and experience, he suspected was methamphetamine. Defendant also had several empty plastic bags, two digital scales, and a hydrocodone tablet on his person. The officers then searched Defendant's vehicle and found a handgun.

During the transport to the Lancaster County Jail, Defendant was advised of his Miranda rights. He waived those rights and told officers he had purchased the drugs. He also indicated that he had information he wanted to share with narcotics officers about individuals involved in the distribution of methamphetamine in Lincoln. During the same exchange, he denied ownership of the handgun.

## ANALYSIS

Defendant alleges constitutional violations stemming from two unrelated police encounters. As a result, each encounter will be taken up separately below.

### I. November 10, 2016 Traffic Stop

Defendant first alleges that Officers Gratz and Hallowell did not have probable cause to initiate the November 10, 2016 traffic stop.

The "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." United States

v. Farnell, 701 F.3d 256, 261 (8th Cir. 2012) (quoting Whren v. United States, 517 U.S. 806, 809-10 (1996)). Thus, an automobile stop, however brief, is subject to "the constitutional imperative that it not be unreasonable under the circumstances." Id.

A traffic stop is reasonable if the police have probable cause to believe that a traffic violation has occurred. U.S. v. $45,000.00 in U.S. Currency, 749 F.3d 709, 715 (8th Cir. 2014) (citing Whren v. United States, 517 U.S. 806, 810 (1996)). The detaining officer must possess an "objectively…reasonable basis for believing that the driver has breached a traffic law." United States v. Mallari, 334 F.3d 765, 766-67 (8th Cir. 2003) (quoting United States v. Thomas, 93 F.3d 479-485 (8th Cir. 1996)). Moreover, "[a]ny traffic violation, however minor, provides probable cause for a traffic stop." United States v. Gadson, 670 F. App'x 907, 908 (8th Cir. 2016) (internal citation omitted). This is true "even if the police would have ignored the traffic violation but for their suspicion that greater crimes are afoot." United States v. Long, 532 F.3d 791, 795 (8th Cir. 2008) (internal citation omitted).

During the November 10, 2016 incident, Officers Gratz and Hallowell personally observed the vehicle driven by Defendant make an illegal turn and an improper lane change in violation of Nebraska law. Their firsthand observation of these traffic violations provided a sufficient basis to initiate the stop—regardless of any other subjective, investigatory motivation they may have possessed. Long, 532 F.3d at 795.

The officers' pat-down of Defendant following the stop was likewise valid. Officers may conduct a pat-down search or "frisk" if there is "reasonable suspicion that the person subjected to the frisk is armed and dangerous." Arizona v. Johnson, 555 U.S. 323, 327 (2009). A pat-down search is valid if, based on a

5

totality of the circumstances, a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." United States v. Trogdon, 789 F.3d 907, 910 (8th Cir. 2015).

Here, the officers observed a pocket knife in the vehicle. In addition, Defendant was apprehensive and made continuous attempts to access his own pockets—even after several warnings to keep his hands visible. United States v. Davis, 457 F.3d 817, 822 (8th Cir. 2006) (finding frisk permissible when suspect is observed obscuring hands behind his back while seated in a vehicle). Thus, officers possessed a "reasonable, articulable suspicion" that Defendant was armed and dangerous and attempting to access a weapon. United States v. Roelandt, 827 F.3d 746, 748 (8th Cir. 2016) (internal citation omitted). Accordingly, the officers had reasonable suspicion to frisk Defendant.

Defendant argues the search of his vehicle following his arrest was illegal under Arizona v. Gant, 556 U.S. 332 (2009). However, it is well settled that an officer may, without a warrant, seize objects that are in plain view within a vehicle, provided that the officer is legally in a position to view the object and that the object's incriminating character is immediately apparent. United States v. Green, 560 F.3d 853, 856 (8th Cir. 2009) (internal citation omitted). "[I]mmediately apparent in this Fourth Amendment context means that the police have probable cause to believe an item is incriminating." Id.

Officer Hallowell credibly testified that he observed a jar containing a white crystalline substance he believed to be methamphetamine while standing outside the vehicle. (Filing No. 27 at CM/ECF p. 23). Officer Hallowell also testified as to his years of relevant police experience investigating contraband, which includes methamphetamine. In addition, immediately prior to the stopping the vehicle, the officer saw it leave a residence that was under surveillance for illegal drug activity.

Under the facts presented, the officers were lawfully in a location where they were able to observe, in plain view, a jar believed to contain illegal drugs. They were entitled to seize this jar. Green, 560 F.3d at 856 (finding that a veteran officer's naked-eye identification of contraband combined with his knowledge that suspect was allegedly involved in drug trafficking was sufficient for application of plain view exception).

Defendant's reliance on Gant as a bar to the subsequent search of his vehicle is misplaced. The jar with methamphetamine was in plain view, and this observation provided probable cause to search the vehicle under the "automobile exception." United States v. Cowan, 674 F.3d 947, 956 (8th Cir. 2012) (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)). The court therefore need not reach the applicability any other warrantless search exceptions—including the search incident to arrest exception outlined in Gant.

Finally, Defendant argues that his Fifth Amendment right against self-incrimination was violated while en route to the Lancaster County Jail because Defendant was interrogated during transport and before being advised of his Miranda rights. Officer Hallowell testified that during the ride, he appeared nervous and "extremely amped up" in a way that was "atypical of someone who's being taken to jail…for a concealed weapon." (Filing No. 37 at CM/ECF p. 20). During a brief stop on the way to the jail, Defendant repeatedly asked officers to take him home. (Id). Officer Hallowell became concerned that Defendant possessed additional weapons, and he asked Defendant if they had "missed something" during his initial pat-down. Defendant indicated that he had methamphetamine in his jacket pocket.

Officer Hallowell's inquiry into whether something had been missed was not interrogation within the meaning of Miranda v. Arizona. 384 U.S. 436, 444-45 (1966). Under the so-called "public safety exception," an officer need not advise a

suspect of his Miranda rights before asking limited post-arrest questions to determine whether officers are likely to encounter items that might pose a danger to themselves or others. United States v. Liddell, 517 F.3d 1007, 1010 (8th Cir. 2008). Officer Hallowell was "very nervous"—Defendant's behavior made him wonder if they had "missed…a gun" during their original pat-down. (Filing No. 37 at CM/ECF at p. 19). Given the officer's concerns, and the limited nature of the questioning to determine whether Defendant had additional concealed items, the inquiry did not violate Miranda's prohibition against unwarned custodial interrogation.

In sum, neither Defendant's Fourth nor his Fifth Amendment rights were violated during the November 10, 2016 stop, arrest or vehicle search. Accordingly, no evidence or statements obtained on November 10, 2016 should be suppressed.

## II. January 27, 2017 Police Encounter

Defendant argues his Fourth and Fifth Amendment rights were violated during a contact with Lincoln Police Officer Hyland on January 27, 2017. During Officer Hyland's patrol shift on January 27, 2017, he ran the license plate number of a red Ford Taurus and discovered the vehicle was registered to Defendant and Defendant did not have a valid driver's license. The officer followed Defendant's vehicle until it parked in an alleyway a few blocks away.

At that time, Officer Hyland made contact with Defendant outside his vehicle. He confirmed Defendant's identity and informed him that he would receive a citation for driving without a valid license. However, as Defendant and Officer Hyland walked towards the police vehicle, Officer Hyland observed Defendant repeatedly reach towards his pockets--even after being told several times not to do so. Defendant appeared extremely nervous. Having noticed a large protrusion inside Defendant's sweatshirt as they walked toward the police

8

vehicle, the officer was concerned that Defendant had a weapon, and he initiated a pat-down search of Defendant. Defendant became uncooperative, and Officer Hyland handcuffed the defendant and placed him under arrest for driving with a suspended driver's license.

Based on seeing a bulge in Defendant's sweatshirt sufficient to hide a weapon, and particularly in light of Defendant's extremely nervous behavior, Officer Hyland had a "reasonable, articulable suspicion" that Defendant was armed and dangerous when the frisk was initiated. Roelandt, 827 F.3d at 748; see also United States v. Crippen, 627 F.3d 1056, 1063 (8th Cir. 2010). The evidence located on the Defendant's person during that pat-down search—digital scales, plastic bags, and contraband—were legally obtained.

After discovery of the contraband of Defendant's person, Officer Hyland, and two other Lincoln police officers who had arrived to assist, conducted a search of Defendant's vehicle. This vehicle search was permitted under the automobile exception to the Fourth Amendment. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." Cowan, 674 F.3d at 956. Finding contraband on a suspect's person during a pat-down search of a vehicle occupant provides probable cause to extend the search to the suspect's vehicle. United States v. Rowland, 341 F.3d 774, 785 (8th Cir. 2003) (finding that discovery of syringe, rolling paper and razor blades during frisk created probable cause for vehicle search).

Officer Hyland had observed the mobility of the vehicle, identified it as belonging to the Defendant, and located contraband on the Defendant's person in a legally valid search. Accordingly, the officers had probable cause to extend

9

their search to Defendant's nearby vehicle, and the evidence recovered inside is not subject to suppression.

Finally, Defendant's Fifth Amendment right against self-incrimination was not violated during the January 27, 2017 contact with Lincoln police officers. Miranda warnings against self-incrimination are required before an individual may be subjected to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). Whether Defendant was in custody for the purposes of Miranda turns on turns on "whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." United States v. Laurita, 821 F.3d 1020, 1024 (8th Cir. 2016) (quoting United States v. Vinton, 631 F.3d 476, 481 (8th Cir.2011)). Interrogation constitutes "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 302-03 (1980). As reflected in the testimony as well as in the police vehicle's video recording captured at the scene and during transport, Defendant was not questioned by police after his detention and was read his Miranda rights prior to making an statements or answering any police questions. (Filing No. 37 at CM/ECF p. 85); see generally (Ex. A).

Based on the foregoing, Defendant's Fourth and Fifth were not violated during his encounter with Lincoln police officer on January 27, 2017 and the statements and evidence obtained during that police encounter should not be suppressed.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 20) be denied in its

entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on April 9, 2018 or as soon thereafter as the case may be called, for a duration of three (3) trial days. Jury selection will be held at the commencement of trial.

Dated this 9th day of March, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge